**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KHACHIK MARGARYAN, | Case No. ED CV 26-00877 FMO (PD) |
| Petitioner, | |
| v. | **ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| PAMELA BONDI, et al., | |
| Respondents. | |

On February 23, 2026, Khachik Margaryan ("petitioner") filed a: (1) Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") against Pamela Bondi, U.S. Attorney General; Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); Fereti Semaia, Warden of Adelanto Detention Facility; and Ernesto Santacruz, Jr., Acting ICE Field Office Director (collectively, "respondents"), (see Dkt. 1, Petition at ¶ 12); and (2) an Ex Parte Application for a Temporary Restraining Order (Dkt. 3, "Application"), seeking release from custody. (Id. at 8). Respondents filed their Opposition to the Application on February 26, 2026, (Dkt. 8, Opp.), and petitioner filed a Reply on February 28, 2026. (Dkt. 9, Reply).

Having reviewed and considered all the briefing filed with respect to petitioner's Application, the court finds that oral argument is not necessary to resolve the Application, see Fed. R. Civ. P. 78; L. R. 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**STATEMENT OF FACTS**

Petitioner, a citizen of Russia, is detained at the Adelanto Detention Center in Adelanto, California. (Dkt. 1, Petition at ¶ 1); (Dkt. 1-3, Exh. 2, I-94 Form); (Dkt. 1-2, Exh. 1, Notice to Appear at ¶ 2). On September 8, 2021, petitioner and his family lawfully entered the United States at the San Ysidro Port of Entry in California following inspection[1] by the U.S. Customs and Border Protection ("CBP"). (Dkt. 1, Petition at ¶ 15); (Dkt. 8, Opp. at 6). Petitioner and his family were then detained by ICE for 12 days. (Dkt. 1, Petition at ¶ 17); (Dkt. 1-7, Exh. 6, Order of Release on Recognizance). "Petitioner has been on ICE supervision . . . since September 20, 2021," (Dkt. 1, Petition at ¶ 17), and has remained in compliance with all terms of his release, including attending all scheduled check-ins.[2] (See id. at ¶¶ 19, 21, 40). Petitioner has also filed an asylum application, secured work authorization, began working in a solar installation business, and filed his taxes. (Id. at ¶ 18). Nevertheless, he was re-detained without notice or a hearing on January 23, 2026. (See id. at ¶¶ 22-32). While at a laundromat, officers surrounded petitioner's car, detained him at gunpoint, and arrested him without providing him with any explanation, warrant, notice, or other document regarding the reason for his arrest. (See id. at ¶¶ 22-26, 43).

Petitioner has been detained at Adelanto since his arrest on January 23, 2026, and his request for humanitarian parole was denied on February 5, 2026. (Dkt. 1, Petition at ¶¶ 32, 36). No final order of removal has been issued against petitioner, who remains in ongoing removal proceedings.[3] (See Dkt. 8, Opp. at 7).

---

[1] Petitioner's I-94 form reflects that on September 8, 2021, he entered the United States under the "DT" class of admission, which signifies admission for humanitarian reasons. See, e.g., Osuna Benitez v. Hermosillo, 2025 WL 3763932, *3 (W.D. Wash. 2025) ("Petitioner's class of admission was 'DT' signifying admission for humanitarian reasons[.]"). Although petitioner alleges – and respondents apparently concede – that he was "admitted into the United States," (see Dkt. 1, Petition at ¶ 15); (Dkt. 8, Opp. at 6), it is not clear whether the parties are using the term "admitted" in a general sense, or as a term of art regarding admissibility. Resolution of this uncertainty is unnecessary to resolve the Application.

[2] Respondents do not suggest that petitioner violated any of the terms of his release. (See, generally, Dkt. 8, Opp.).

[3] Petitioner recently had an immigration court hearing scheduled for March 2, 2026. (See Dkt. 8, Opp. at 7).

Petitioner now challenges the legality of his detention, alleging, among other things, that his arrest and continued detention violated his procedural due process rights under the Fifth Amendment.[4] (Dkt. 1, Petition at ¶¶ 94-98).

## LEGAL STANDARDS

I.    TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

Federal Rule of Civil Procedure 65 provides courts with the authority to issue preliminary injunctions or temporary restraining orders ("TRO"). See Fed. R. Civ. P. 65(a) & (b). The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for the preliminary injunction. Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)). The standards for a temporary restraining order and a preliminary injunction are the same. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001); NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788 F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same). "Like a preliminary injunction, a temporary restraining order is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" Six v. Newsom, 462 F.Supp.3d 1060, 1067 (C.D. Cal. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008)).

A petitioner seeking a preliminary injunction or TRO must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter, 555 U.S. at 20, 129 S.Ct. at 374. Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element

---

[4]  Because the court finds the procedural due process issues raised in petitioner's Application and Petition to be dispositive, it need not address the other arguments raised by petitioner.

may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." Id. The last two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 1762 (2009).

II.     STATUTORY AND REGULATORY FRAMEWORK.

The court recently discussed the scope of respondents' detention authority under 8 U.S.C. §§ 1225(b) and 1226(a),[5] and set forth the statutory and regulatory framework applicable to the issuance and revocation of parole granted pursuant to § 1182(d)(5)(A). In the interest of expediency, the court adopts that discussion here. See Jarquin-Gadea v. Noem, et al., Case No. ED CV 25-2800 (Dkt. 13, Court's Order of November 17, 2025, at 6-12).

**DISCUSSION**

Petitioner contends that a TRO is warranted because he is likely to succeed on the merits of his due process argument, among others, and because the remaining Winter factors tip in his favor. (Dkt. 3, Application at 13-19). In opposition, respondents argue that: (1) § 1252(b)(9) and § 1252(g) divest this court of jurisdiction to consider the merits of petitioner's claims; and (2) petitioner's re-detention is authorized by § 1226(a), and he is regardless subject to mandatory detention under § 1225(b). (See Dkt. 8, Opp. at 9-14). Neither argument is persuasive.

I.      LIKELIHOOD OF SUCCESS ON THE MERITS.

A.      Respondents' Threshold Contentions.

As the court discussed in Lopez de Castro v. Noem, et al., Case No. ED CV 25-2457 (Dkt. 11, Court's Order of October 31, 2025, at 5-8), neither § 1252(g) nor § 1252(b)(9) deprive the court of jurisdiction over a petitioner's challenge to his detention. For the sake of expediency, the court adopts and incorporates the reasoning regarding §§ 1252(b)(9) and (g) as set forth in Lopez de Castro.

---

[5] Unless otherwise indicated, all remaining section references are to Title 8 of the United States Code.

B.    Petitioner is Likely to Succeed on the Merits of His Procedural Due Process Claim.

Respondents do not address – let alone rebut – petitioner's procedural due process arguments.  (See, generally, Dkt. 8, Opp.).  Instead, respondents contend that under § 1226(a), "[t]he government may detain a non-citizen during his removal proceedings, release him on bond, or release him on conditional parole," and that § 1225(b), which "authorizes [petitioner's] ongoing mandatory detention," "does not contemplate any pre-detention hearing."  (Id. at 14).  In other words, respondents suggest that because the detention, parole, and re-detention of non-citizens is permitted under the relevant statutory framework, petitioner's detention is insulated from any constitutional challenge.  But respondents fail to address the constitutional significance of their initial decision to release petitioner on his own recognizance, i.e., conditional parole.[6]  See Espinoza v. Kaiser, 2025 WL 2675785, *6 (E.D. Cal. 2025) (explaining that ICE may choose to release an immigrant detained at the border either under humanitarian parole or conditional parole, and that "[a] person on conditional parole is usually released on their own recognizance subject to certain conditions such as reporting requirements."); (see Dkt. 1, Petition at ¶¶ 2, 17); (Dkt. 1-7, Order of Release on Recognizance); (Dkt. 8, Opp. at 6) ("[H]e was released on an Order of Supervision ('OSUP') by [ICE].").

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693, 121 S.Ct. 2491, 2500 (2001).  "It is well established that the Fifth Amendment

[6]  Respondents invoke both § 1226(a) and § 1225(b) in an attempt to justify petitioner's re-detention.  But "the two provisions are exclusive; a noncitizen can only be subject to § 1225 or § 1226, not both." J.U. v. Maldonado, 805 F.Supp.3d 482, 490 (E.D.N.Y. 2025).  Here, petitioner's release on his own recognizance aligns more closely with "the provisions of § 1226's discretionary detention." Maldonado, 805 F.Supp.3d at 493 (collecting cases finding that a person released on recognizance was released pursuant to § 1226).  Indeed, the Order of Release on Recognizance provided to petitioner in 2021 states that his release was done "[i]n accordance with section 236 of the Immigration and Nationality Act[,]" (Dkt. 1-7, Exh. 6, Order of Release on Recognizance), "which is 8 U.S.C. § 1226." Fernandez Lopez v. Wofford, 2025 WL 2959319, *4 (E.D. Cal. 2025).  Regardless, "[t]he court finds it irrelevant whether petitioner was originally detained pursuant to § 1225[(b)] and paroled pursuant to § 1182(d)(5)(A), or whether [he] was detained and paroled pursuant to § 1226(a).  That is because respondents' failure to provide petitioner with any pre-deprivation notice or opportunity to be heard whatsoever was constitutionally deficient." Jarquin-Gadea, Case No. ED CV 25-2800, (Dkt. 13, Court's Order of November 17, 2025 at 12).

entitles aliens to due process of law in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673, 145 S.Ct. 1003, 1006 (2025) (internal quotation marks omitted). Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process[,]" Demore v. Kim, 538 U.S. 510, 523, 123 S.Ct. 1708, 1717 (2003), due process "requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 984 (1990).

Petitioner's procedural due process claim involves two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Fernandez Lopez, 2025 WL 2959319, at *3 (internal quotation marks omitted). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972). To determine what protections due process demands in a given situation, courts consider the: (1) private interest that will be affected by the official action; (2) risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional safeguards; and (3) government's interest, including the function involved and the burdens that would be imposed by additional process. See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976).

**1.     Petitioner Possesses a Liberty Interest in Remaining Out of Custody**.

Petitioner invokes "the most significant liberty interest there is – the interest in being free from imprisonment." Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020). While "the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if they fail to live up to the . . . conditions of release." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. 2025) (alteration marks omitted). Accordingly, "[w]hen an immigrant is placed into parole status after having been detained, a protected liberty interest may arise[,]" and the "Due Process Clause may protect this liberty interest even where a statute allows the immigrant's arrest and detention and does not provide for procedural protections." Espinoza v. Kaiser, 2025 WL 2675785, *9 (E.D. Cal. 2025).

Here, respondents' decision to grant parole to petitioner in 2021 "reflect[ed] a determination by the government that [petitioner] is not a danger to the community or a flight risk." Fernandez Lopez, 2025 WL 2959319, at *2 (internal quotation marks omitted). The grant of parole "constituted an implied promise that [his] liberty would not be revoked unless [he] failed to live up to the conditions of [his] release." Pinchi, 792 F.Supp.3d at 1034 (internal quotation marks omitted); see e.g., Maldonado, 805 F.Supp.3d at 497 (finding that petitioner who had been released from ICE custody on his own recognizance gained a "clearly established" liberty interest under Mathews). In short, petitioner has a protected liberty interest in remaining out of custody absent a showing that he poses a risk of flight or danger.[7] See, e.g., Espinoza, 2025 WL 2675785, at *10-11 (finding that petitioners released from immigration detention on their own recognizance had "substantial private interests in being out of custody"); Noori v. Larose, 807 F.Supp.3d 1146, 1157, 1164 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had protected liberty interest in remaining out of custody).

**2.    Petitioner Was Entitled to Notice and a Pre-Deprivation Bond Hearing Prior to His Re-Detention**.

Under the circumstances, due process requires that respondents provide petitioner with notice and a pre-deprivation bond hearing prior to revocation of his parole.[8] See, e.g., Ramirez

---

[7] Also, petitioner's liberty interest strengthened with time and reliance. More than four years elapsed between petitioner's release on conditional parole on September 20, 2021, and his arrest on January 23, 2026. (See Dkt. 1, Petition at ¶¶ 17, 22); (Dkt. 1-7, Exh. 6, Order of Release on Recognizance at 1). During that time, petitioner attended all required ICE check-ins, welcomed the birth of his U.S.-born child, filed an asylum application, secured work authorization, began working, and duly filed his taxes. (Dkt. 1, Petition at ¶¶ 16-19). The community ties established by petitioner "underscore the high stakes of [his] liberty." See Pinchi, 792 F.Supp.3d at 1033.

[8] Indeed, it does not appear that respondents complied with even the limited amount of process contemplated by the relevant statutes and regulations. (See, generally, Dkt. 8, Opp.). First, if petitioner's detention and parole had been initially authorized by § 1225(b) and § 1182(d)(5)(A), the government did not provide petitioner with written notice prior to any purported revocation of his parole, as would be required by § 1182(d)(5)(A)'s implementing regulations. See 8 C.F.R. § 212.5(e)(2)(i) ("[P]arole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.")

Tesara v. Wamsley, 800 F.Supp.3d 1130, 1137 (W.D. Wash. 2025) (granting TRO and ordering that petitioner, who was re-detained months after the expiration of his parole, "should be released and only re-detained after a hearing [in] front of an immigration judge"); Valdez v. Joyce, 803 F.Supp.3d 213, 219 (S.D.N.Y. 2025) ("In the context of revocation of civil release, an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing.") (internal quotation marks omitted).  In short, the court finds that the risk of an erroneous deprivation of petitioner's liberty interest is high.  See, e.g., Fernández López, 2025 WL 2959319, at *6 ("[T]he risk of an erroneous deprivation [of liberty] is high where, as here, [the petitioner] has not received any bond or custody redetermination hearing.") (internal quotation marks omitted); Escobar Salgado v. Mattos, et al., 2025 WL 3205356, *24 (D. Nev. 2025) ("The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion.").

### 3.   Respondents' Interest Does Not Outweigh the First Two Factors.

"As to the third and final Mathews prong, the Attorney General's discretion to detain individuals . . . is valid where it advances a legitimate governmental purpose, such as ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." Maldonado, 805 F.Supp.3d at 498 (internal quotation marks and alterations omitted). But respondents do not contend that petitioner was detained for such purposes. (See, generally, Dkt. 8, Opp.).  Indeed, in the roughly 52 months that petitioner was released on parole, he complied with his immigration requirements, (Dkt. 1, Petition at ¶¶ 16-21), and there is nothing in the record to establish that petitioner poses a flight risk or a danger to the community.  Thus,

---

(emphasis added). Second, if petitioner's detention had instead been authorized by § 1226(a), the government failed to re-arrest him pursuant to a warrant as required.  (See, generally, Dkt. 8, Opp.); 8 U.S.C. § 1226(b) ("The Attorney General at any time may revoke a bond or parole authorized under [§ 1226(a)], rearrest the alien under the original warrant, and detain the alien."). Respondents' failure to comply with even this limited process underscores the risk of erroneous deprivation.

respondents have "failed to show a significant interest in Petitioner's continued detention." Maldonado, 805 F.Supp.3d at 498.

Because each of the Mathews factors favors petitioner, the court finds that he has shown a likelihood of success on the merits of his procedural due process claim.

II.      LIKELIHOOD OF IRREPARABLE HARM.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 994-95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Where "an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (internal quotation marks omitted). Here, there is no doubt that petitioner has been and will continue to be irreparably harmed by the continued deprivation of his liberty in violation of his due process rights.

III.     BALANCE OF THE EQUITIES AND PUBLIC INTEREST.

The final two merged factors likewise weigh heavily in favor of petitioner. Although the government has a compelling interest in the enforcement of its immigration laws, that interest cannot justify the violation of petitioner's constitutional rights. See Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (internal quotation marks omitted); Vargas v. Jennings, 2020 WL 5074312, *4 (N.D. Cal. 2020) ("Just as the public has an interest in the orderly and efficient administration of this country's immigration laws . . . the public has a strong interest in upholding procedural protections against unlawful detention.") (internal quotation marks and citation omitted); Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law[.]") (internal quotation marks omitted).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Ex Parte Application **(Document No. 3)** is **granted** as set forth in this Order.

2. Respondents shall release petitioner from immigration detention forthwith, and shall not impose any release restrictions (e.g., electronic monitoring) on petitioner that were not in place prior to petitioner's arrest or detention in this case unless deemed necessary at a future pre-deprivation bond hearing.

3. Respondents shall file with the court a Notice of Compliance within twenty-four (24) hours of releasing petitioner.

4. Respondents shall not re-detain petitioner during the pendency of these proceedings without providing petitioner with, at minimum, individualized notice describing the change in circumstances necessitating his arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge. Petitioner shall not be detained unless respondents demonstrate at the pre-deprivation hearing that petitioner is a flight risk or a danger to the community, and that there are no combination of conditions that will reasonably assure petitioner's appearance and/or the safety of any other person in the community. If petitioner is again placed into detention in this District following proceedings in this case, respondents shall not transfer or remove petitioner from this District unless executing a final order of removal issued against petitioner.

5. Given that the standard for granting a TRO and preliminary injunction is the same, Stuhlbarg Int'l Sales Co., 240 F.3d at 839 n. 7, the court will construe petitioner's Application as an application for a preliminary injunction ("PI Application"). The parties' briefing on the PI Application shall, at a minimum, address: (1) what issues remain for decision; (2) with respect to each issue, whether the party intends to stand on briefing already filed, and if so, pointing the court to the specific docket entries and page numbers that provide the relevant briefing on each of the issues that remain; (3) address the merits of any issues for which the party will not be standing

10

on its prior briefing; and (4) whether the party agrees to consent to the assigned Magistrate Judge for all purposes.[9]

6. Respondents shall file their opposition to the PI Application by no later than **March 21, 2026**. Failure to file their opposition by the deadline set forth above shall be deemed as consent to the granting of the PI Application.

7. Petitioner shall file his Reply in support of his PI Application by no later than **March 24, 2026**.

8. The court shall decide, after reviewing the parties' papers, whether to hold a hearing on the PI Application or what other steps are necessary to adjudicate the Petition.

Dated this 16th day of March, 2026.

/s/
_____
Fernando M. Olguin
United States District Judge

---

[9] If the parties conclude that they both consent to the assigned Magistrate Judge, they may file a Consent to Magistrate Judge (form CV-11D) as soon as possible after petitioner's Reply is filed.